IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDA EVERETT,                     :
                                    :        CIVIL ACTION NO. **4:CV-13-1515**
                                    :
                Plaintiff           :
                                    :
        v.                          :        (Magistrate Judge Blewitt)
                                    :
                                    :
HOUSING AUTHORITY OF THE            :
CITY OF SHAMOKIN, *et al.*,         :
                                    :
                                    :
                Defendants          :

**<u>MEMORANDUM AND ORDER</u>**

## I.    BACKGROUND.

On June 6, 2013, Plaintiff, Brenda Everett, a resident of Shamokin, Northumberland County, Pennsylvania, filed, through counsel, the instant civil rights action pursuant to 42 U.S.C. § 1983, in order to enforce her rights under the United States Housing Act of 1937 ("USHA"), 42 U.S.C. §§1437, *et seq*.  (Doc. 1).   Plaintiff raises a due process claim under the Fourteenth Amendment.  Plaintiff also raises a claim under the Housing Act. Plaintiff attached Exhibits to her Complaint. Defendants are the Housing Authority of the City of Shamokin ("SHA") and Ronald A. Miller, Executive Director of the SHA, in his official capacity.     Further, Plaintiff filed an *In Forma Pauperis* Motion.  (Doc. 2).  Plaintiff also filed a Motion for Preliminary Injunction.  **(Doc. 3)**.  On June 12, 2013, Plaintiff filed her brief in support of her injunction motion.  (Doc. 6).

This Court has jurisdiction over this action based on 28 U.S.C. § 1331 and §1341(a).

On June 10, 2013, the Court issued an Order granting Plaintiff's *In Forma Pauperis* Motion and directing service of Plaintiff 's Complaint on Defendants.  (Doc. 4).  The Summons was issued and Defendants were served with Plaintiff's Complaint.

After being granted an extension of time, Defendants filed their brief in opposition to Plaintiff's injunction motion on July 24, 2013, with attached Exhibits.  (Doc. 13).

On July 29, 2013, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Complaint.  (Doc. 14).

On August 4, 2013, Plaintiff filed her reply brief in support of her injunction motion with attached Exhibits.  (Doc. 16).

This case was then ordered to mediation.  (Doc. 18).

On August 21, 2013, Defendants  filed a Motion for Partial Judgment on the Pleadings and a support brief.  (Docs. **21** & 22).  Defendants move to dismiss with prejudice Count I of Plaintiff's Complaint, *i.e.,* her claim under the USHA, and to dismiss with prejudice all claims against Defendant Miller.  On September 9, 2013, Plaintiff filed her opposition brief to Defendants' Motion for Judgment on the Pleadings.  (Doc. 25).

Plaintiff's Motion for Preliminary Injunction and Defendants' Motion for Partial Judgment on the Pleadings are both ripe for disposition.  (Docs. 3 & 21).

The parties consented to proceed before a U.S. Magistrate Judge for all matters pursuant to 28 U.S.C. §636(c).[1]  (Docs. 23 & 24).

---

[1]The undersigned was originally assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

2

Subsequently, the Court scheduled oral argument, on the record, with respect to Plaintiff's Motion for Preliminary Injunction and Defendants' Motion for Partial Judgment on the Pleadings, and it was continued to and held on October 23, 2013.  (Docs. 27-29).

The Court now considers both Plaintiff's Motion for Preliminary Injunction and Defendants' Motion for Partial Judgment on the Pleadings.  (Docs. 3 & 21).

## II.   STANDARDS OF REVIEW.

### A.   42 U.S.C. § 1983

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").   "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

### B.        Motion for Preliminary Injunction

As the Third Circuit Court stated in *Hartmann v. Maybee-Freud*, 279 Fed. Appx. 142, 144 (3d Cir. 2008), the Plaintiff in a civil rights action who filed a motion for preliminary injunction "was required to show that he was likely to succeed on the merits of his claims, that the denial of relief would result in irreparable harm, and that granting the injunction would not result in irreparable harm to the Defendants and was in the public interest."(citation omitted). *See also Ball v. SCI-*

*Muncy*, 2010 WL 4352929, *4 (M.D. Pa. 10-27-10).

In *Ball*, the Court stated:

A preliminary injunction is not granted as a matter of right. *Kershner v. Mazurkewicz,* 670 F.2d 440, 443 (3d Cir.1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy that places precise burdens on the moving party. As a threshold matter, it is a movant's burden to show that the preliminary injunction is the only way of protecting the plaintiff from harm. *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3d Cir.1992). For [a Plaintiff] to sustain his burden of proof under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. *Abu-Jamal v. Price,* 154 F.3d 128, 133 (3d Cir.1998); *Kershner,* 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied. *Hohe v. Casey,* 868 F.3d 69, 72 (3d Cir.1989).

Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm.") Further, immediate irreparable injury is more than merely serious or substantial harm. *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." *Dice v. Clinicorp, Inc.,* 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ...." *Acierno,* 40 F.3d at 655 (citation omitted).

Other considerations in assessing a motion for preliminary injunctive relief is the possible harm to other interested parties if the relief is granted, *see Kershner,* 670 F.2d at 443, and whether the issuance of relief would be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Corp.,* 269 F.3d 1149, 1154 (10th Cir.2001).

*Id.,* *4-*5.

Additionally, the grant or denial of a motion for a preliminary injunction is within the sound discretion of the district judge. *Kershner v. Mazurkiewicz,* 670 F.2d at 443(citation omitted).

Thus, as the Court stated in *Victor v. Varano,* 2011 WL 5026216, *2 (M.D. Pa. 9-12-11) adopted by 2011 WL 5036016 (M.D. Pa. 10-21-11):

> Accordingly, for [a moving party] to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. *Abu–Jamal v. Price,* 154 F.3d 128, 133 (3d Cir.1998); *Kershner,* 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir.1989) (emphasis in original), (quoting *Morton v. Beyer,* 822 F.2d 364 (3d Cir.1987)).

### C. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is only appropriate in favor of defendants when they "clearly establish[ ] that no material issue of fact remains to be resolved" such that they are "entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir.2008) (internal quotation omitted). When reviewing a motion for judgment on the pleadings, a court must view the facts in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Allah v. Al-Hafeez,* 226 F.3d 247, 249 (3d Cir. 2000); *Snyder v. Daugherty* 899 F.Supp.2d 391, 396 (W.D. Pa. 2012). In other words, a district court applies the same standard to a judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6), but may also review the answer and instruments attached to the pleadings. *Brautigam v. Fraley,* 684 F.Supp.2d 589, 591–92 (M.D. Pa. 2010). Accordingly, the Court shall utilize the same

process we use to determine the sufficiency of a complaint when analyzing a motion to dismiss for failure to state a claim.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

Also, the *Reisinger* Court stated:

Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir. 1999). **Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."** ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

*Id.*(emphasis added).

In the present case, the Court will consider the Exhibits submitted by the parties since Plaintiff's claims in her Complaint are based upon them. *See Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d at 1196.

## III.    PLAINTIFF'S PRELIMINARY INJUNCTION MOTION, DOC. 3.

Plaintiff Everett filed a Motion for Preliminary Injunction basically seeking the Court to direct Defendant SHA , a public housing authority ("PHA"), to port her Section 8 housing choice voucher ("HCV"), *i.e.,* rent subsidy under HUD regulations, to forthwith process her request for tenancy approval. Plaintiff states that she had a housing choice voucher from the Harrisburg Housing Authority when she lived in Harrisburg, PA, and that the Harrisburg Housing Authority issued her a port voucher before her rent subsidy payments were terminated.  Plaintiff states  that in August 2012, she tried to move to Shamokin and port her housing choice voucher for rent subsidy. Plaintiff claims that after Defendants issued her a search voucher on August 23, 2012, so that she could locate housing and move to Shamokin with her rent subsidy, Defendants improperly halted the process regarding her request for subsidized tenancy approval without giving her timely notice for their actions and failure to act, and without giving her an opportunity to contest their actions. Plaintiff states that she was seeking a subsidized tenancy in Shamokin starting on September 1, 2012, that she had the right to move to Shamokin with her pre-existing housing choice voucher and, that Defendants denied her continued participation in the housing choice voucher program ("HCVP") by failing to process her timely request for tenancy approval.  Plaintiff points out that she was already receiving housing assistance payments for at least one year from the prior PHA,  the Harrisburg Housing Authority, and that when the receiving PHA, Defendant SHA, committed to

absorb her voucher from the Harrisburg Housing Authority on July 24, 2012, SHA could no longer deny her portability move and was obliged to process her August 24, 2012 request for tenancy approval.  Plaintiff maintains that Defendants have continually refused to  process her request for tenancy approval and have denied her housing assistance payments for over one year, *i.e.*, since October 17, 2012.  Consequently, Plaintiff contends that she was effectively terminated from participation in the HCVP.

As such, Plaintiff claims that Defendants violated her constitutional rights as well as her rights under the Housing Act and applicable regulations.  In particular, Plaintiff claims that Defendants violated her due process rights by failing to give her proper notice and a hearing regarding its "no issuance" decision with respect to her timely request for tenancy approval. Plaintiff contends that she has no remedy other than to seek equitable relief from the Court to direct Defendants to port her housing choice voucher and process her request for tenancy approval so that she can live in Shamokin with rent subsidy.   Plaintiff states that since Defendants have failed to provide her with housing assistance, she and her family are threatened with homelessness.  Plaintiff admits that since she moved to Shamokin in the summer of 2012, she has been paying her landlord unsubsidized rent for her residence, but she claims that this has decreased her available income for other family needs. Plaintiff speculates that if she suffers a financial emergency or income shortfall in the future, she and her family may be evicted from their Shamokin apartment if she cannot pay her full unsubsidized rent.  Plaintiff concedes that to date, she has not been notified that she is being evicted and that she has been able to live in the Shamokin apartment since last summer *sans* subsidized rental payments.

Defendants oppose Plaintiff's Injunction Motion since they contend that Plaintiff has no private right of action under the United States Housing Act regarding a port-in voucher application to transfer her rent subsidy (Section 8 housing choice voucher) from the Harrisburg Housing Authority to the SHA, and that it was within SHA's discretion to accept or reject her port-in application.   Defendants also argue that in 2012, when Plaintiff tried to port (or transfer) her Harrisburg Housing Authority housing voucher for rent subsidy to Defendant SHA, her paperwork was deficient and SHA could not process her request under HUD regulations.   Defendants further state that even if Plaintiff's paperwork was properly completed, she was not eligible to receive a housing voucher under the lower income standard of the SHA compared to the Harrisburg Housing Authority's income standard.   Defendants also maintain that there is no imminent threat of irreparable harm to Plaintiff and, that Plaintiff will be allowed to remain living in her current rental unit in Shamokin (as she has been for over one year) and maintain housing on her own if she continues to pay her rent.   In particular, Defendants point out that since Plaintiff has moved to Shamokin in August 2012, she has been paying her landlord unsubsidized rent for her residence. Additionally, Defendants state that SHA fully advised Plaintiff of the reasons why a housing voucher was not issued for her and why her request for tenancy approval was not processed and, that Plaintiff had the opportunity to contest their decisions.   Defendants further contend that since it was within SHA's discretion to accept or reject Plaintiff's port-in voucher application to transfer her rent subsidy (housing choice voucher) from the Harrisburg Housing Authority to the SHA, Plaintiff  has not stated a cognizable claim under §1983.   Thus, Defendants maintain that Plaintiff is not entitled to injunctive relief and to an order from this Court directing them to process Plaintiff's request for

tenancy approval.

## IV.   DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, DOC. 21.

As mentioned, Defendants move to dismiss with prejudice Count I of Plaintiff's Complaint, *i.e.,* her claim under the USHA, and they argue that the portability provision of the Housing Act § 1437f do not provide Plaintiff with a private right of action in a §1983 case.  Defendants also move to dismiss with prejudice all claims against Defendant Miller stating that Miller cannot be sued in his official capacity for damages under §1983 and that Plaintiff's claims against Miller are redundant of her claims against Defendant SHA.

The Court will further discuss Defendants' Doc. 21 Motion when it addresses the likelihood of success on the merits of Plaintiff's claims with respect to Plaintiff's Doc. 3 Injunction Motion.

## V.   DISCUSSION.

As mentioned, the moving party seeking a preliminary injunction must demonstrate: (1) the likelihood of success on the merits; (2) that the party will suffer irreparable harm by the denial of the injunction; (3) that granting the relief will not result in even greater harm to the other interested party; and (4) the public interest will not be adversely affected by the granting of relief.  *Ecri v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir. 1987); *In Re Arthur Treacher's Franchise Litigation,* 689 F.2d 1137, 1143 (3d Cir. 1982). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Arthur Treacher's,* 689 F.2d at 1143; *see also Hartmann v. Maybee-Freud,* 279 Fed. Appx. 142, 144 (3d Cir. 2008); *Ball v. SCI-Muncy,* 2010 WL 4352929, *4.

As discussed below, the Court will deny Plaintiff 's Motion for a Preliminary Injunction. **(Doc.**

3).

The Court finds that Plaintiff has failed to show irreparable harm since she admits that when she moved to Shamokin in August 2012, she was able to pay her landlord unsubsidized rent for her residence, since she and her family are still in her apartment now for over one year and, since she only speculates that if she suffers a financial emergency or income shortfall in the future, she and her family may be evicted if she could not pay her full unsubsidized rental payment.    The Court also finds that has Plaintiff   failed  to show a likelihood of success on the merits of her claims.[2] Additionally, the Court finds that Plaintiff has adequate remedies at law if she succeeds in her case, namely, money damages for her unsubsidized rental payments she has been making since she moved to Shamokin and began paying rent in October 2012.

Plaintiff is head of a household which includes her adult disabled daughter, SM, and her minor disabled daughter, MM.  Plaintiff was a participant in the  housing choice voucher program ("HCVP") which was administered by the  Harrisburg Housing Authority for at least one year. Plaintiff claims that after Defendant SHA committed to absorb her voucher from the Harrisburg Housing Authority on July 24, 2012, she made a timely request for tenancy approval to Defendants on August 24, 2012, to rent an apartment in Shamokin, but that Defendants failed to properly process her request and essentially terminated her from the HCVP without due process of law. Plaintiff states that as a result of Defendants' actions, she and her family  may, sometime in the future, by threatened with homelessness.  Plaintiff maintains that under the Housing Act, §1437f(r)

---

[2]Since both parties accurately discuss the HCVP of Section 8 of the U.S. Housing Act in their briefs, the Court does not detail it at length herein.  *See also Henry v. City of Erie*, 728 F.3d 275 (3d Cir. 2013).

and §1437d(k), she had the right to move or "port" from Harrisburg to Shamokin and to continue to participate in the HCVP.

Defendant SHA is a public housing authority that receives financial assistance from HUD and SHA administers a HCVP that gives vouchers to low income families to subsidize their rental of apartments privately owned by landlords who participate in the program. Since Defendant SHA receives funds from HUD, it must comply with all HUD regulations and the Housing Act. As stated, Plaintiff claims that Defendant SHA violated the Housing Act and her constitutional rights by failing to properly process her request for tenancy approval after it accepted her voucher from the Harrisburg Housing Authority and, by terminating her from the HCVP without due process of law. Thus, Plaintiff claims that she was unlawfully denied housing assistance by Defendants despite being eligible for it.

In *Liberty Resources, Inc. v. Philadelphia Housing Authority*, 528 F.Supp.2d 553, 558 (E.D.Pa. 2007), the Court stated that the HCVP "was established pursuant to Section 8 of the United States Housing Act. 42 U.S.C. §1437." The Court stated that the Housing Act sought to use federal funds to provide safe and affordable dwellings for low income families and to place responsibility in PHA's to administer the programs which "provide federal housing assistance." *Id.*(citation omitted).

The Court in *Liberty Resources, Inc. v. Philadelphia Housing Authority*, 528 F.Supp.2d at 567, also stated:

> According to the statute authorizing Section 8 and the HCV Program, the program was created "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing ...." 42 U.S.C. § 1437f(a). A HUD regulation designed to implement Section 8 states that the purpose of the HCV Program is: "HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing." 24

> C.F.R. § 982.1(a)(1) ("Part 982 is a unified statement of program requirements for the tenant-based housing assistance programs under Section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f)"). Neither the Statute nor the HUD regulation promise to provide housing to all eligible participants. Rather, they state that the purpose of HCVP is to aid families in locating and affording decent housing through the provision of rental subsidies. The HCV Program facilitates the placement of low-income families in affordable housing by seeking the assistance of private sector landlords.

*See also Henry v. City of Erie*, 728 F.3d 275 (3d Cir. 2013).

Generally, under the Housing Act, "a qualified applicant will pay rent based on his or her income and then a [PHA] pays a private landlord the difference between the tenant's contribution and the rent agreed upon between the landlord and the PHA." *Spieth v. Bucks County Housing Authority*, 594 F.Supp.2d 584, 587 (E.D.Pa. 2009). "The Section 8 program provides rent subsidies for low- and moderate-income participants so that they can afford to lease privately owned housing units." *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159, 161 (3d Cir. 2002). Thus, under the Section 8 program, participants pay rent based on their income and ability to pay, and the PHA "then makes 'housing assistance payments' to private landlords in an amount calculated to make up the difference between the participant's contributions and a 'contract rent' agreed upon by the landlord and the PHA." *Id*.

Additionally, the housing choice vouchers are "portable," and the participant "may carry the benefit of the voucher to a new rental unit should he or she decide to move. 24 C.F.R. Part 982." *Gladney v. Sureluck Homes*, 2013 WL 2182797, *3 (W.D. Mich. May 20, 2013)(citations omitted).

Plaintiff Everett, a participant in the federal Section 8 tenant-based housing program when she resided in Harrisburg, filed this §1983 civil rights action to enforce her constitutional rights and rights under the Housing Act against Defendant SHA, which is a PHA, and Defendant Miller (only

in his official capacity), who administered the program in Shamokin, where Plaintiff was moving.[3] Plaintiff basically claims that after Defendants accepted her voucher from the Harrisburg Housing Authority they unlawfully failed to process her timely request for tenancy approval and to provide her with rental assistance for her apartment in Shamokin and, she seeks declaratory and injunctive relief as well as damages, costs and attorney's fees.  As stated, Defendant SHA accepted Plaintiff 's (second) voucher from Harrisburg Housing Authority, and SHA issued Plaintiff a search voucher, but Defendant SHA claims that the Harrisburg Housing Authority voucher was not valid and that there were many problems with Plaintiff's port-in voucher.[4]   Thus, Defendant SHA has not processed Plaintiff's request for tenancy approval, has not performed an inspection of Plaintiff's apartment, and has not signed a Housing Assistance Payment ("HAP") contract with Plaintiff's landlord.  Plaintiff claims that Defendants' conduct has effectively terminated her from the housing choice voucher program and, that Defendant SHA has failed to provide her with any  rental assistance since she moved from Harrisburg to Shamokin and started paying rent in October  of 2012.

The  Court  heard  oral  argument  regarding  Plaintiff's  Preliminary  Injunction  Motion  and Defendants' Motion for Partial Judgment on the Pleadings  on October 23, 2013.  The likelihood

---

[3]The Court in *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 161 n. 2, noted that tenant-based assistance "entails a voucher entitling the participant to select a unit anywhere in the PHA's jurisdiction."

[4]Defendants enumerate in their Doc. 13 opposition brief (pp. 4-7) to Plaintiff's injunction motion why they contend the Harrisburg Housing Authority voucher was not valid and why there were many problems with Plaintiff's port-in voucher. The Court does not repeat Defendants' contentions herein.

of Plaintiff's success on the merits of her claims will be addressed first with respect to both pending

Motions.  Plaintiff is not required "to establish with certainty that [she] will succeed on the merits."

*Solomon v. Housing Authority of Pittsburgh*, 2006 WL 6666739, *2 (W.D. Pa. 2006).  Plaintiff has

the burden "to make a *prima facie* showing that [she] has a reasonable probability of succeeding

on the merits."  *Id*.(citation omitted).

 The Court initially agrees with Defendants and its Doc. 21 Motion that insofar as Plaintiff has

named Miller as a party and has sued him only in his official capacity, Plaintiff's claims against Miller

are redundant of her claims against the SHA.  Also, to the extent that Plaintiff seeks damages against

Defendant Miller solely in his official capacity, this request for relief is subject to dismissal with

prejudice as Plaintiff can only seek damages from this Defendant in his personal capacity.  *See Will

v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3

(M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);  *Gale v. Stori*, 608

F.Supp. 2d 629, 636 (E.D. Pa. 2009).

 Further, as Defendants correctly point out, since Plaintiff has asserted a constitutional claim

against Defendant SHA, Plaintiff's constitutional claim against Defendant Miller  in his official

capacity should be dismissed as redundant.  *See Swedron v. Borough*, 2008 WL 5051399, *4 (W.D.

Pa. Nov. 21, 2008)(Court held that official capacity claims under §1983 against Defendant police

officers should be dismissed since they were redundant of the claims against Defendant

Borough)(citing *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *Brice v. City of York*, 528

F.Supp.2d 504, 516 n. 19 (M.D. Pa. 2007)("claims against state official in their official capacities

merge as a matter of law with the municipality that employs them."); *Burton v. City of Phila.*, 121

F.Supp.2d 810 (E.D. Pa. 2000)).

Therefore, the Court finds that Plaintiff's constitutional claim against Defendant Miller in his official capacity is redundant of her claim against the SHA, and in its discretion, it will dismiss Plaintiff's constitutional claim under §1983 against Miller.  *See Swedron v. Borough*, 2008 WL 5051399, *5.

The Court also agrees with Defendants that there is no private right of action under Section 8 of the Housing Act.  In *Swift v. McKeesport Housing Authority*, 2009 WL 3856304, *10 n. 4 (W.D.Pa. Nov. 17, 2009), the Court noted as follows:

> The court notes there is no express or implied right of action under Section 8 of the USHA. The threshold inquiry is whether a claim for violation of Section 8 can only be brought under § 1983, which requires the need to show a sufficient factual basis for municipal liability, or if there is an express or implied right of action under the USHA. Congress grants individuals a private right of action by either providing an express right to sue within the language of the statute, or by implying a private right to sue. Section 8 of the USHA does not contain an express private right of action. The question, therefore, is whether or not there is an implied private right of action to sue for violations of Section 8. Neither the Supreme Court nor the Court of Appeals for the Third Circuit has addressed whether there is an implied right of action for claims under Section 8 of the USHA.
>
> Other courts of appeals and district courts have addressed this issue and determined that there is no implied private right of action under Section 8. *See, e.g., Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 611 (5th Cir.2001) (finding no private right of action to enforce § 1437f(e) of USHA); *Salute v. Stratford Greens Garden Apts.*, 136 F.3d 293, 298–99 (2d Cir.1998) (doubting that an implied private right of action in favor of a Section 8 certificate holder existed under the statute); *Edwards v. Dist. of Columbia*, 821 F.2d 651 (D.C.Cir.1987); *Brown v. Hous. Auth. of McRae*, 784 F.2d 1533 (11th Cir.1986) (tenants had no implied private right of action against city housing authority, its executive director and board of commissioners to enforce 42 U.S.C. § 1437a of USHA); *Hill v. Group Three Hous. Dev. Corp.*, 799 F.2d 385, 394 (8th Cir.1986); *Perry v. Hous. Auth. of Charleston*, 664 F.2d 1210, 1218 (4th Cir.1981); *Modica v. Reyna*, No. 1:08–CV–871, 2009 WL 2827975, at *9 (E.D.Tex. Sept.2, 2009) (finding no implied private right of action to sue under Section 8);

*Kirby v. Richmond Redevelopment and Hous. Auth.*, No. 3:04–cv–791, 2005 WL 5864797, at *7 (E.D.Va. Sept.28, 2005) (no implied private right of action exists under 42 U.S.C. §1437f of USHA for a Section 8 voucher holder against a public housing authority to force a tenant's landlord to comply with housing quality standards); *Rodgers v. Garland Hous. Agency,* No. Civ. 3:01–CV–0477–H, 2001 WL 1029516, at *3 (N.D.Tex. Aug.21, 2001) ("numerous decisions support the conclusion that the United States Housing Act of 1937 does not permit an implied private right of action under Section 8 programs"); *Green v. Konover Residential Corp.,* No. 3:95CV1984, 1997 WL 736528, at *9 (D.Conn. Nov.24, 1997) (holding no private cause of action under USHA. or the implementing regulations against a private landlord under 42 USHA §1437, seeking affirmative money relief.)

This court is persuaded by the rationales of *Banks, Salute, Brown,* and *Modica* that there is no implied private right of action under Section 8 of the USHA. Therefore, the court will grant defendant's motion to dismiss plaintiff's claims against MHA to the extent that plaintiff is seeking to assert an implied right of action under Section 8 of USHA. Plaintiff must seek relief for a violation of Section 8 under the enabling provisions of § 1983. *Wright v. Roanoke Redevelopment and Hous. Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (concluded housing project tenants could bring an action under § 1983 against housing authority for violations of the USHA).

*See also Koroma v. Richmond Redevelopment & Housing Authority*, 2010 WL 1704745 (E.D. Va. 2010)(court held that the portability provisions of the Housing Act § 1437f(r) do not create a private right of action in a §1983 case);[5] *Reynolds v. PBG Enterprises, LLC,* 2011 WL 2678589, *8-*9 (E.D.

---

[5]While the *Koroma* case is not binding precedent in the instant case, this Court concurs entirely with the Court in *Koroma* and its rationale.  This Court agrees with our Defendants and finds that the *Koroma* case is directly on point with the instant case, and this Court adopts the reasoning of the *Koroma* case.   *See also Gladney v. Sureluck Homes*, 2013 WL 2182797, *3("The federal courts of appeals and district courts that have addressed this issue unanimously hold that there is no implied right of action under Section 8 [and its numerous subsections].")(citations omitted).  The Court in *Gladney v. Sureluck Homes*, 2013 WL 2182797, *3, also stated that "[t]his conclusion is bolstered by the federal regulations governing the [HCVP].  24 C.F.R. §982.456(tenant is not a third-party beneficiary to the HAP contract between the PHA and the owner and 'may not exercise any right or remedy against the owner under the HAP contract.')."

Pa. July 6, 2011)(Sections 1437, 1437f and 1437d of the USHA do not create personal rights)(citing *Johnson v. City of Detroit*, 446 F.3d 614, 625-27 (6th Cir. 2006)); *Brooker v. Altoona Housing Authority*, 2013 WL 2896814, *19 (W.D. Pa. June 12, 2013)(Court held that Plaintiff Brooker "cannot invoke §1983 to enforce 'rights' created by the regulations permitting a public housing agency to deny Section 8 benefits to those who have been 'evicted from federally assisted housing'")(citation omitted).

Recently, in *Henry v. City of Erie*, 728 F.3d at 281, the Third Circuit Court held that "[f]ederal appellate courts that have addressed the issue have held that the Housing Act does not create a private right to housing of a particular condition or a private cause of action to enforce any such rights." (citation and footnote omitted).  The Third Circuit in *Henry* also stated that the Housing Act "itself is silent on the issue of a private cause of action."  *Id*.(citing 42 U.S.C. §1437f).  The Third Circuit in *Henry*, 728 F.3d at 281 n. 5, also noted that in *Reynolds v. PBG Enterprises, LLC*, 2011 WL 2678589, *8-*9 (E.D. Pa. July 6, 2011), the Court found "no express federal rights created or private cause of action implied under §1437f."

This Court agrees entirely with the *Swift* Court as well as the Courts in *Koroma*,  *Reynolds* and *Gladney.* Based on these cases and the *Henry*  case, this Court finds that there is no private right of action created under §1437f of the USHA.  *See Reynolds v. PBG Enterprises, LLC*, 2011 WL 2678589, *8-*9 (E.D. Pa. July 6, 2011)(Court held that "§1437f does not contain clear and unambiguous rights-creating language in its various subsections ... .").  Thus, the Court finds that Plaintiff Everett is not likely to succeed on her claim under the USHA.  In fact, the Court will grant Defendants' pending Motion for Partial Judgment on Pleadings with respect to Plaintiff's claim in

Count I of her Complaint under the USHA, and the Court will dismiss with prejudice this claim. Based on the foregoing, the Court finds futility in allowing Plaintiff leave to amend her claim under the USHA since this claim is not cognizable. This leaves as the sole remaining claim in this case Plaintiff's due process claim under §1983, Count II, against only Defendant SHA.

To state a cognizable Fourteenth Amendment due process claim, the Court in *Swedron v. Borough*, 2008 WL 5051399, *5 (W.D. Pa. Nov. 21, 2008), stated:

> To state a claim under § 1983 for deprivation of procedural due process, a plaintiff must allege that (1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir.2006). Plaintiff does not even attempt to show how the available procedures failed to afford him due process of law. In fact, plaintiff alleges that the charges against him were dismissed, presumably by some component of the Pennsylvania criminal justice system. A state provides constitutionally adequate procedural due process when it provides reasonable post-deprivation remedies, *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir.1995), overruled on other grounds sub nom, *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir.2003), ... .

Thus, "[i]n order to state a claim for failure to provide due process, a Plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *Kauffman v. PA Soc. For the Prevention of Cruelty to Animals*, 766 F.Supp.2d 555, 571 (E.D. Pa. 2011); *Gilfus v. Vargason*, 2006 WL 2827658, *4.

Our Defendants state that "it is unlikely that [Plaintiff] will be successful on [her] due process claim ... , due to the fact that the SHA undertook substantial investigation and followed procedural safeguards in denying [Plaintiff's] portability claim."  Defendants also state that Plaintiff "took her claims to both HUD and to other administrative bodies before bringing claims in this [federal]

21

Court." (Doc. 13, pp. 12-13).  As such, Defendants maintain that Plaintiff fails to show a likelihood of success on the merits of her due process claim since she clearly has adequate post-deprivation remedies available to her and she has not shown that the remedies available to her regarding the SHA's refusal to process her portability voucher are unavailable or patently inadequate.

To the extent Plaintiff named SHA as a Defendant and raises a constitutional claim against this municipal corporation under §1983, she must set forth facts showing that a custom or policy of this municipal housing authority deprived her of a constitutional property right under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978).  Also, Defendant SHA cannot be held vicariously liable under §1983 for actions of its individual employees, including Defendant Miller.  *See Swift v. McKeesport Housing Authority*, 2009 WL 3856304, *7 (W.D.Pa. Nov. 17, 2009)(Court held that a housing authority created under the PA Housing Authorities Law, 35 Pa.C.S.A §1543, was a municipal corporation which could be sued under §1983).   Plaintiff basically alleges that Defendants violated her due process rights under the Fourteenth Amendment and the Housing Act to participate in the Section 8 housing choice voucher program by essentially rejecting her port-in voucher application and by failing to process her request for tenancy approval.

Plaintiff asserts a §1983 constitutional claim, pursuant to *Monell*, against Defendant SHA for failure to implement appropriate polices, customs  and practices regarding her port-in voucher application and  her request for tenancy approval.  As stated, Defendant SHA cannot be held liable for the conduct of persons it supervises pursuant to *respondeat superior*.  *Meyers v. Schuylkill Co.*

*Prison*, 2006 WL 559467, *9 (M.D. Pa.).[6]  Rather, Defendant SHA  "[is] subject to liability [in a §1983 action] to the extent [it] maintain[ed] an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citation omitted).

In *Mangus*, the Court stated:

> With respect to such institutional defendants it is clear that a County cannot cannot be held liable for the unconstitutional acts of its employees on the theory of respondeat superior.  *See Monnell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, [a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996).  *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir.2000).

2010 WL 521114, *3.

Thus, Defendant SHA cannot be held liable, either for its conduct or for the conduct of employees pursuant to *respondeat superior*.  *Brickell v. Clinton County Prison Bd.*, 658 F.Supp. 2d 621, 626-27 (M.D. Pa. 2009).  In order for Plaintiff to successfully allege a constitutional claim under §1983 against Defendant SHA, she must raise a *Monell* claim alleging that the SHA is a governmental entity and thus a "person" under §1983 and, alleging that either a policy or lack of policy of Defendant SHA led to the violation of the  Plaintiff's constitutional rights, *i.e.*, her due process rights.  *See Monell v. New York Dept. of Social Servs.*, *supra*; *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).

---

[6]*See also Mangus v. DCP*, 2010 WL 521114, *8-*6 ( M.D. Pa. 2010).

In *Kokinda,* 557 F. Supp. 2d at 590-91, the Court stated:

Under *Monell*, "municipalities and other local government units are among those "persons" to whom Section 1983 applies." *Malles v. Lehigh County*, 639 F. Supp. 2d 566, 576 (E.D. Pa. 2009). As the Court in *Malles v. Lehigh County*, 639 F. Supp. 2d at 576, stated:

> According to the teaching of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), Lehigh County "can be sued directly under §1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell*, 436 U.S. at 690.
>
> To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002)(citing *Bd. of County Comm'rs of Bryan County v.Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).
>
> But, despite Defendants' arguments that Plaintiff has failed to allege any specific policies that authorized the actions officers Brenner and Ohl allegedly took, (Doc. 9, at 10; Doc. 11, at 6-8), there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss. *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999). This would be "unduly harsh" at this early juncture. *Id.*

Therefore, in order to properly state a §1983 claim against Defendant SHA, Plaintiff must not only allege that it qualifies as a governmental entity and thus is a person under §1983 standards, but Plaintiff must also must allege that Defendant SHA unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of her constitutional rights.

As stated, the Court finds that Defendant SHA is a municipal entity subject to suit in a §1983 action. *See Swift, supra*. The Court agrees with Defendants that Plaintiff has only properly raised

24

a constitutional claim under §1983 against SHA in this case.  Therefore, the Court will allow Plaintiff to proceed only her Fourteenth Amendment constitutional claim under §1983 against Defendant SHA alleging that SHA has unlawfully failed to accept her eligibility under the port provisions of the Housing Act and to grant her a portability move and, has unlawfully failed to process her August 24, 2012, request for tenancy approval.  Plaintiff also claims that Defendant SHA failed to give her notice of the reasons for its action and an opportunity to contest its actions. However, as this stage of the case, prior to meaningful discovery, it is not clear if Plaintiff can succeed on the merits of her constitutional claim against Defendant SHA.  Thus, the Court finds that Plaintiff has failed to show the likelihood of success on the merits of her remaining claim sufficient to entitle her to the granting of her Preliminary Injunction Motion.

The Court also finds that Plaintiff has failed to show irreparable harm if her Preliminary Injunction Motion is not granted.   As Defendants pointed out, since Plaintiff moved to Shamokin in or about August 2012, she has been paying her landlord unsubsidized rent for her residence and she will be allowed to remain living in her current unit in Shamokin with her daughters and maintain housing on her own if she continues to pay her rent. Defendants also state that "it is clear from the Complaint that [Plaintiff] is living in the same apartment she would have chosen if she were getting her Housing Choice Voucher subsidy." (Doc. 13, p. 14). The Court agrees with Defendants.  Additionally, the Court finds that Plaintiff did not present any evidence that she is in imminent danger of  being evicted from her current unit and she merely speculates that if she cannot afford her rent, she may be evicted at some unknown time in the future.  Such speculation is not sufficient to show irreparable injury.

Further, the Court concurs with Defendants that money damages are adequate should Plaintiff prevail on her remaining due process claim against SHA since SHA can be ordered to reimburse Plaintiff an amount of subsidy for the 12 months of unsubsidized rent Plaintiff has been paying to date.

## VI.      CONCLUSION.

Therefore, the Court will deny Plaintiff's Preliminary Injunction Motion.  **(Doc. 3).**[7]  Further, the Court will grant Defendants' Motion for Partial Judgment on the Pleadings.  **(Doc. 21)**.

An appropriate Order will be issued.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 1, 2013**


26

---

[7]To the extent Plaintiff's counsel requests the Court to keep the record open regarding Plaintiff's Preliminary Injunction Motion to allow Plaintiff to seek an interpretation from HUD with respect to Defendant SHA's obligations under the port provisions of the  Housing Act, the Court declines to do so.  Plaintiff's counsel does not provide a time line to try and obtain said information and, does not indicate if HUD will even provide such information.  In any event, the Court finds that Plaintiff can seek the information from HUD during discovery and submit it to the Court with respect to any dispositive motions which may be filed.