# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRENDA EVERETT,**<br>        Everett | |
| **vs.** | Civil Action No. **4:CV-13-1515** |
| **HOUSING AUTHORITY OF THE CITY OF SHAMOKIN,** | (Mag. Judge. Blewitt)<br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT (LIABILITY)** |
|         **Defendant** | |

Joseph R. DeCristopher, Pa. Id. 29937
jdecristopher@northpennlegal.org

North Penn Legal Services
133 N. 2nd. St.
Sunbury, PA 17801-2125
(570)320-8731 (direct); (570)286-5687, ext. 8731
Attorneys for Everett

**PRELIMINARY STATEMENT**.  Plaintiff (herein, Everett) submits the following brief pursuant to Local Rules 7.4 and 7.7 in reply to the brief filed by defendant (herein, SHA) in opposition to Everett's motion for partial summary judgment on the issue of liability.

Everett was a "participant" in good standing with the Harrisburg Housing Authority (HHA) on track to becoming a participant in Shamokin.  In claiming no process was due Everett, SHA reverses itself and misconstrues the facts and law.   As the "receiving PHA," SHA announced that it would "absorb" HHA's port voucher, and timely issued her a search voucher in response thereto.  It then failed, inter alia, to afford Everett the process due.[1]

SHA's self-serving assertion that Everett's "participation" terminated on June 30, 2012 is not accurate, and does not create a genuine issue of material fact.  SHA's reliance upon a query report based on coding not recorded until January, 2013 is misplaced. That coding was first entered by HHA in error because SHA itself failed timely to follow applicable regulations (as noted in fn1). [2]   Everett was a participant in good standing, attempting to port, and Shamokin issued her a voucher following a corrected port request.

---

[1] SHA also failed to perform program responsibilities, such as communicating timely with the sending Harrisburg Housing Authority (HHA), as noted, *infra*.

[2] See, PE 1, Affidavit of Cheryl Hawk, especially ¶¶10 – 13.  See, also, Exhibit 1, annexed hereto, a PIC query dated February 27, 2014, reflecting the "Code 5, Portability Move Out" status directed by HUD.  *See, also*, 24 C.F.R. §982.355(c)(5), (6), (7) and (8).  Unexplained computer codes long after the fact do not negate Everett's participant status.

Everett therefore was entitled to constitutional due process as articulated in regulations under the housing statute, and SHA failed to afford her the process due.

SHA refused to proceed after (a) issuing a voucher, (b) accepting from Everett her timely request for tenancy approval, and (c) affording an informal *hearing* on a proposed termination of voucher at which Everett prevailed.  SHA cannot now reasonably justify its second termination decision with the self-serving assertion that Everett, though a participant, was not a participant *in Shamokin*.

Chronological review of undisputed facts.  In support of the following synopsis, Everett will make reference to various documents previously filed in connection with the cross motions for summary judgment filed respectively by the parties.  Exhibits in support of plaintiff's motion for summary judgment shall be referred to as, "PE ___"; exhibits in opposition to plaintiff's motion for summary judgment shall be identified as, "DOE ___";  exhibits in support of defendant's motion for summary judgment shall be identified as "DE___";  exhibits in opposition to defendant's motion for summary judgment shall be identified as, "POE__."   Everett also relies on Exhibit 1 hereto, a query report dated February 27, 2014 showing Everett's correct status as a "Code 5, portability move out."

1.  Years prior to termination of her voucher by SHA on September 5, 2012,  Everett achieved "admission" into the Housing Choice Voucher (HCV) Program administered by HHA, and thus became and remained a "participant" in good standing.  Affidavit of Cheryl Hawk, PE 1; 24 C.F.R. §982.4 (definitions, "admission" and "participant.")

2.  June 19, 2012:  Everett personally visited the office of the Shamokin Housing Authority expressing an interest in moving with her voucher to the HCV program there; she was informed of her right to request port papers to be forwarded from HHA to SHA.  POE 7 and 8.

3.  July 24, 2012:  SHA responded to HHA's inquiry indicating that it was then absorbing vouchers through the port process, PE 6; 24 C.F.R. §982.335.

4.  July 24, 2012:  HHA telecopied the first port package to SHA including a port voucher issued timely on June 5, 2012 while she was still living in Harrisburg, with a term extending to August 24, 2012. PE 2.

5.  August 9, 2012:  HHA presented a second port package to SHA reflecting correct family size (3 persons, not 4), extending the voucher term to September 24, 2012.  PE 3.  Everett was thus a participant "voucher holder" being assisted in the HCV program by Harrisburg through the "portability" process.  See, 24 C.F.R. §982.4, defining "voucher holder" and "portability".

6.  August 24, 2012:  as the "receiving PHA", SHA began HCV program assistance to Everett by issuing and signing with her its own voucher and supplying a form request for tenancy approval.  PE 8; 24 C.F.R. §966.4 (defining "receiving PHA".)

7.  August 24, 2012:  Everett returned the request for tenancy approval to SHA on its form, PE 10, thus timely fulfilling her responsibility to locate a landlord willing to participate in the HCV program.

8.  Additional program assistance in the form of inspection of the target dwelling was originally scheduled to occur on August 31, 2012; the inspection was never conducted nor rescheduled.  PE 12.

9.  September 5, 2012:  SHA notified Everett that it proposed termination of her voucher, prohibiting prospective subsidy because of an alleged unauthorized occupant reported (in error) to be living in the target dwelling.  The notice (PE 13) offered Everett the right to request a hearing to contest the decision, which she timely did.

10.  October 17, 2012:  SHA by its Executive Director, Ronald A. Miller, acting as a hearing officer, issued a decision after informal hearing on October 9, 2012, neither finding nor identifying any factual basis for the proposed termination noticed on September 5, 2012, as the allegedly

unauthorized occupant lived elsewhere and was not receiving mail at Everett's address.  PE 14.

11.  Around or after September 5, 2012, SHA terminated Everett's voucher anyway, this time *without* a companion notice like PE13:  SHA failed to give Everett written notice explaining why, and failed to afford Everett any opportunity to object to the unexplained termination.  Neither did SHA comply with regulations when it failed promptly explain to Everett why it was not acting on the hearing decision in her favor on October 17, 2012, 24 C.F.R. §982.555(f)(3).  SHA's actions were also contrary to its own Administrative Plan, Chapter 9, POE 10, by failing to provide written notice of the reasons for denying her request for tenancy approval.

12.  November, 2012 – May, 2013:  Investigation and review of SHA by HUD, requested by Everett, resulted in exchanges of letters between SHA and HUD; HUD repeatedly directed SHA to reissue a voucher to Everett; it did not.

13.  February 5, 2013, the first letter from HUD to SHA directed reissuance of voucher to Everett, PE 22, Complaint Exhibit 7;

14.  April 11, 2013:  second letter sent from HUD to SHA directing reissuance of voucher to Everett under threat of sanction, PE 22, Complaint Exhibit 8.

15.  April 23, 2013:  SHA informed Everett and HUD only that Everett, just like any other individual interested in subsidized housing, could make a new application to SHA, by which, however, she implicitly would forfeit any claim for subsidy for the period extending from voucher issuance by SHA on August 24, 2012 until perfection of the new application (a period of at least 8 months, with concomitant loss of subsidy dollars for that intervening period.) DE 11.

16.  May 10, 2013:  third letter sent from HUD to SHA directing reissuance of a voucher to Everett, PE 22, Complaint Exhibit 9.

17.  June 6, 2013:  Everett filed the Complaint herein after having no change in position from that stated by SHA in DE 11 on April 23, even after Complaint Exhibit 9 on May 10.

## ARGUMENT

UNDER THE 14TH AMENDMENT, HOUSING STATUTE, AND HUD REGULATIONS, THERE IS NO ISSUE OF MATERIAL FACT THAT AFTER AUGUST 9, 2012, SHA OWED, BUT DID NOT AFFORD TO EVERETT, THE PROCESS DUE HER.

A.  As a participant seeking to move with continued subsidy from Harrisburg to Shamokin, Everett was entitled to the process due a participant.

Upon "admission"[3] to the HCV program in Harrisburg, Everett became a "participant".   Everett visited the SHA offices on June 19, 2012, in the course of the last month of subsidy in Harrisburg because she had decided to move out of Harrisburg and relocate elsewhere.  SHA's employee, Cornelia Adams, then accepted information from Everett on SHA's form, and heard Everett indicate that she wanted to verify eligibility before making a port request. Adams told her that she could have the Harrisburg Housing Authority forward a port request.  Note Everett's ongoing good standing in Harrisburg, and her care to comply with program guidelines.

A request was faxed by HHA to SHA on July 24 and followed up by a partially corrected port request on August 9, 2012.  SHA then issued a 3-bedroom voucher to Everett which was fully executed on August 24, 2012.

Everett elected to port under 42 U.S.C.§1437f(r), and such an election imposed program responsibilities on SHA:

> *(2) The public housing agency having authority with respect to the dwelling unit to which a family moves under this subsection shall have the responsibility of carrying out the provisions of this subsection with respect to the family. ...*

(emphasis added).  The process due Everett as a porting HCV participant with HHA became the responsibility of SHA, "the public housing agency having

---

[3] "Admission.  The point when the *family becomes a participant* in the [HCV] program.  The date used for this purpose is *the effective date of the first HAP contract for a family (first day of initial lease term) in a tenant-based program*," 24 C.F.R.§982.4, emphasis added.

authority with respect to the dwelling unit to which a family moves under this subsection..."  As a participant in good standing with HHA, Everett was also the beneficiary of 24 C.F.R.§§ 982.335 (portability procedures) and 314(c)(moves with continued assistance), factors absent from the case of a first-time applicant.

SHA received a timely, updated port request from HHA on August 9, 2012 and issued its own voucher to Everett on August 24, 2012.   SHA was acting as the "receiving PHA" for purposes of effecting portability:

> Receiving PHA. In portability: A PHA that receives a family selected for **participation** in the tenant-based program of another PHA. **The receiving PHA issues a voucher and provides program assistance to the family.**

24 C.F.R. §966.4, emphasis added.  The program was the HCV program.  The assistance to be provided necessarily included those steps preliminary to the payment of subsidy, including provision of a request for tenancy approval, inspection of the target dwelling, reexamination of income, and negotiation of a HAP contract with prospective landlord.[4]

---

[4] This court has determined that Everett has no right to sue in federal court for redress of SHA's failure to perform program functions under the statute, but it simultaneously determined that Everett may proceed on her due process claim.  The denial to Everett of program functions attendant to her participant status is essential to understanding the extent of process due, because Everett's property interest as a voucher holder included the performance of such program functions which had to be performed in order to perfect her property interest in prospective subsidy.  When SHA denied that performance to Everett, it could not do so consistently within norms of due process, that is, without explaining why and giving her an opportunity to object.   It did not.

Contrary to SHA's assertion, Everett was a participant within the meaning of 24 C.F.R. §982.4 because at the time of the second port request, she had been admitted to the HVC Program, the HAP contract in Harrisburg had not expired[5],  and she was assisted by HHA.  SHA assisted Everett's port request by issuing its own voucher in response thereto, providing her with its form request for tenancy approval, and scheduling an inspection of the target dwelling.  For all intents and purposes, Everett continued to be a "participant" with a property interest in continuing subsidy far less speculative than and far beyond that of a previously unsubsidized applicant.

SHA agreed.  On September 5, it sent a notice (PE 13) offering a hearing to Everett on an under-investigated and ill-founded decision it had made to terminate her voucher because of what turned out to be a mistaken report that she had an unauthorized occupant in her residence.[6]  The notice given offered an informal *hearing* and conformed to the due process requirements for *participant*s directed by 42 U.S.C. §1437d(k) as promulgated in HUD regulations  at 24 C.F.R.§ 982.555,  (*See*, brief in support of Plaintiff's Motion for Partial Summary Judgment, pp. 6 – 9).  In that notice,

---

[5] *See*, 24 C.F.R. §982.455:  HAP contract expires 180 calendar days after last HAP payment, and Everett was subsidized through June 30, 2012.
[6] Before Everett prevailed at informal hearing, SHA failed to follow investigative procedures set forth in the Program Integrity Addendum of its own Administrative Plan (*See*, ¶11, Plaintiff's Opposition Facts [Document 49] and documents of record cited therein).

*inter alia*, Everett was told the discrete and limited basis for the adverse action, and was given a time frame within which to request an informal *hearing*.

Everett timely requested a hearing which was held on October 9, 2013, and at which *she prevailed* (PE 14).  From the process offered and pursued by Everett in response to PE 13, SHA had concluded that Everett was a participant and effectively entitled to the process due a participant.  Everett reasonably relied upon and expected such process prospectively.

Moreover, with respect to the decision of October 17, 2012 (PE 14) made by its Executive Director, Ronald A. Miller, in the capacity of hearing officer,  there persisted a regulatory requirement in the nature of due process owed to Everett once SHA had afforded her the hearing at which she prevailed:

> (3) If the PHA determines that it is not bound by a hearing decision, ***the PHA must promptly notify the family of the determination, and of the reasons for the determination.***

24 C.F.R. §982.555(f) (emphasis added).  SHA did not favor Everett with the required *prompt* notice that it would not proceed *and* its reasons.  Hence, in addition to violating the notice and manner requirements of the second decision to terminate Everett's participation, it separately denied her the process due with respect to its decision on which she had prevailed.

At some unannounced time either before or after Everett prevailed at informal hearing, SHA decided to terminate her voucher. *SHA did not, prior to commencement of suit herein, thereafter give notice of another termination decision and afford Everett an opportunity to contest.*

SHA now argues without authority that "Shamokin's decision that it could not sign a HAP contract was administrative and no review was required." The assertion is  not supported by the undisputed facts and betrays a reversal of approach that was not timely voiced.  SHA told Everett she could make a port request to move with subsidy to Shamokin.  SHA told HHA that it was absorbing port vouchers, and responded to the Everett's second port request by issuing a voucher, providing her a request for tenancy approval, and scheduling an inspection.  When it first gave her a reason for not proceeding, it told Everett why and offered her a hearing,  which she won. SHA then went on to terminate the voucher anyway, but without notice of any reason or opportunity to object.

SHA's resort to *post-hoc* attempts to rationalize the unexplained termination by now inventing the premise that its decision was administrative and not subject to due process review is wholly unpersuasive and harkens back to HUD's observation on May 10, 2013:

> *With each letter that SHA or its counsel issues, SHA changes the*
> *proffered reason for the revocation of Ms. Everett's voucher. There*
> *is no justification for SHA's persistent violation of the applicable*
> *regulations which mandate that SHA issue Ms. Everett a voucher.*

PE 22, Complaint Exhibit 9, (emphasis added).  Why would HUD direct SHA to

*reissue* a voucher to Everett if the assertion that SHA could not sign a HAP

contract were true?   Instantly, SHA multiply failed to follow guidelines in

preference to an unexplained policy formulated by its director, aimed at the

result of not accepting Everett in Shamokin.

SHA also argues that it could not subsidize Everett because she was not

eligible for subsidy in Shamokin.  On this point, SHA is wrong, as noted in

detail in Plaintiff's Opposition Facts [document 44](*See*, especially, ¶¶ 8 and

19 thereof).  *See also*, 24 C.F.R. §982.355(c)(7) (receiving PHA determines

voucher size, which affects payment standard) and (c)(9) (noting need of the

receiving PHA to reexamine income).   To the extent SHA asserts that HUD

*accepted* its arguments, the successive letters to HUD contained in PE 22

state otherwise, rather counseling a "re-examination" of income as prescribed

by regulations that SHA ignores.   Moreover, even if SHA were right on the

point, which it is not, it relates to the damage issue rather than the due

process liabilty issue:  Remember, SHA did not offer this justification until

communicated to Everett by SHA on April 2, 2013 (DE 10), 8 months post

voucher termination, neither time- nor manner-compliant with SHA's due process responsibilities.

In addition to the cases cited in plaintiff's brief [document 39] in support of her motion for partial summary judgment and brief in opposition [document 50] to defendant's motion for summary judgment,  other federal cases support Everett's position.

In Orullian v. Hous. Auth., 2011 U.S. Dist. LEXIS 149800, 2011 WL 6935039 (D. Utah Dec. 30, 2011), the court determined that plaintiff had a protected property interest in her voucher, and that when she requested the housing authority to assist her by allowing a move with subsidy, the defendant housing authority violated her rights of procedural due process by denying her a notice and a hearing in refusing to allow such a move.

In Simmons v. Drew, 716 F.2d 1160 (7th Cir. 1983), the court recognized that *"program tenure"* in the form of a participant's right of being able to seek out persons willing to be landlords in the subsidy program *is a protected property interest*.  The court there went on to reject the defendant housing authority's arguments that a plaintiff must be receiving subsidy from the housing authority to recover for a process violation, citing (at 1163) Carey v. Piphus,  435 U.S. 247 (1978).  In sum, notwithstanding SHA's argument to

the contrary, Everett did not need to be a participant "in Shamokin" to have cognizable due process rights.

Everett's circumstances are easily distinguished from those of the plaintiff in Augusta v. Cmty. Dev. Corp., 2008 U.S. Dist. LEXIS 103911, 2008 WL 5378386 (E.D.N.Y. 2008).  There, the plaintiff's *voucher* had *expired*, terminating his participant status, and extinguishing the responsibility of the housing authority to issue a written notice and afford opportunity for hearing.

Instantly, SHA argues that it had no responsibility to afford process to Everett, wrongly claiming that it has no duty to her based on the end of subsidy payments by Harrisburg after June 30, 2012.  SHA does not contend that it fulfilled the time and manner requirements of due process.  Rather, it incorrectly argues that no process was due Everett.  It is wrong.

Everett also relies on Rayburn v. City of Phoenix Hous. Dept., 2008 U.S. Dist. LEXIS 123675, 2008 WL 8871872 (D. Ariz. 2008).  The Rayburn court reviewed the regulatory framework and affirmed that the essentials of process due in terminating participation of the holder of a Section 8 Housing Choice Voucher include a housing authority's ***affirmative*** obligation to give meaningful notice and an opportunity to contest.

Finally,  *See*, Munford v. Newark Hous. Auth., 2000 Del. Ch. LEXIS 63 (Del. Ch. Apr. 26, 2000), finding a due process denial when the defendant

15

housing authority failed to assist a participant to move with subsidy to a new location, appreciating that admission results in participant status and due process beyond what is due an applicant.

> **B.    In the alternative, even if Everett was not due the process owed to a participant, SHA failed to afford the process she was due.**

Everett maintains that she was entitled to the process rights as a porting participant seeking to move with subsidy.  However, in the alternative, even if she was something less than a "participant," she was more than an applicant because she had been admitted to the HCV program and was a voucher holder.  As such, she had property interests in the voucher that were protected by the Constitution.  When SHA terminated the voucher without notice of its reasons and without providing an opportunity to object, it failed to afford Everett due process.

There is no factual dispute that SHA made a second termination decision which was not timely articulated, and that it failed to offer a hearing as it had done with its first termination decision (PE 13).   Whenever SHA made the second termination decision, it gave no notice, and it failed to afford Everett opportunity to contest, notwithstanding the requirements of its own Administrative Plan prescribing written notice both to family and owner of a denial of a request for tenancy approval.  POE 10.

16

In this respect, *See*, <u>Binns v. City of Marietta Hous. Auth.</u>, 2007 U.S. Dist. LEXIS 101546 (N.D. Ga. Mar. 1, 2007) (citing <u>Kelly v. R.R. Retirement Bd.</u>, 625 F.2d 486, 489-90 (3d Cir. 1980) and <u>Davis v. Mansfield Metropolitan Housing Auth.</u>, 751 F.2d 180, 185 (6th Cir. 1984) (due process for Section 8 *applicants* includes notice and opportunity for hearing)).  *See also,* <u>Wilkinson v. Abrams</u>, 627 F.2d 650, 664-665 (3d Cir. 1980) (*due process extends to applicants* for unemployment compensation seeking to establish their entitlement to statutory benefits.)

In <u>Binns,</u> the court determined that the refusal of the defendant housing authority to issue a written decision was sufficient to support *an applicant's* due process claim.  Instantly, Everett was more than an applicant seeking admission to the program.  She was a participant granted "admission" to the HCV program by HHA.  She invoked the statutory portability procedures to relocate to Shamokin with subsidy.  Shamokin represented that it was absorbing port vouchers into its program (rather than billing the sending PHA), and invited the port request.  HHA then made a request for Everett, and SHA issued Everett a voucher.

As a "voucher holder," Everett had legitimate expectation interests in continued rental assistance by seeking out persons willing to rent her housing

under the program rules, <u>Simmons v. Drew</u>, *supra*. *See, generally*, <u>Perry v.</u>

<u>Sindermann</u>, 408 U.S. 593 (1972).

SHA points to Everett's discrimination complaint before the PHRC and

HUD's oversight of SHA's mishandling of Everett's attempted port as

discharging its responsibility to provide due process when it terminated

Everett's voucher.  Not so.  Due process is owed by the state actor depriving

the property interest.  <u>Matthews v. Eldridge</u>, 424 U.S. at 333; <u>Goldberg v.</u>

<u>Kelly</u>, 397 U.S. 254, 267-271 (1970).

Everett's PHRC complaint was filed *pro se* and alleged racial

discrimination.  PHRC did not issue a decision on the issues raised herein, and

the outcome of the PHRC proceeding is irrelevant to the claims and defenses

in this case.  With respect to HUD oversight, SHA ignored and continues to

ignore HUD's consistent directives that it reissue the voucher initially given to

Everett.  That Everett sought to resolve the matter without litigation by

seeking assistance from HUD does not negate the necessary conclusion that

SHA denied Everett due process.

4.  <u>Conclusion</u>.   Rather than fulfill clear, black letter procedural

responsibilities it owed to Everett under the Fourteenth Amendment, statute,

regulations, and its own Administrative Plan, SHA terminated Everett's

voucher without notice and opportunity to object.  It now presents

multifaceted, *post hoc* rationalizations for its failures to act, and points to an erroneous coding of Everett's "end of participation", inaccurately claiming that she was not a participant, and then incorrectly arguing that only a participant is entitled to due process.

This court should not be deceived by the circular logic of SHA's argument:  because SHA didn't act timely as it was required to (*See*,  24 C.F.R. §982.355(c)(5 ), (6), (7), (8) and (9)), HHA erroneously coded Everett's participation as having ended, a mistake which HUD identified and of which it saw fit to require correction.  Having caused the error by its failing timely to report to HHA, SHA now comes before this court arguing that the erroneous "end of participation" coding  is a complete justification for its failure to fulfill its duties to Everett.  HHA staff has offered testimony by affidavit that HUD directed, and HHA did correct, the EOP coding, PE 1 and Exhibit 1 hereto. This argument and SHA's other, thin rationalizations for failing to afford Everett due process when it terminated her voucher, should be rejected.

Additionally, regarding HUD's oversight, it is clear from HUD's communications that it had determined both that Everett was a participant and that there was no basis for terminating her voucher.  These non-rule-making determinations are relevant to the elements of the due process claim

before this court, and they are entitled to deference, <u>Blum v. Bacon</u>, 457 U.S. 132, 141 (1982); <u>Chevron, U.S.A., Inc.</u>, 467 U.S. 837, 844 (1984)   .

Notwithstanding its contentions to the contrary, as explained herein, Everett was a participant after she was provided admission into HHA's HCV program.  She had a due process interest in moving with subsidy, and her interest as a porting voucher holder is enough to require due process with respect to deprivation.  SHA's director was not acting as a tort-feasor, and Everett's claim is not one of *respondeat superior.*  SHA's director was the architect of SHA's policy to keep Everett from subsidy in Shamokin, and Everett has demonstrated sufficient facts to make out her *Monell* claim. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481-484 (1986); <u>Bd. of the County Comm'rs v. Brown</u>, 520 U.S. 397, 405 (1997).

The remedies appropriate for a procedural due process claim are to be made by the Court **after** determining whether the deprivation was otherwise justified, **despite** the due process violation.  <u>Carey v. Piphus supra</u>; *See also*, e.g., <u>Brewer v. Chauvin</u>, 938 F.2d 860, 862 -865 (8th Cir. 1991) (*en banc*); <u>Knudson v. City of Ellensburg</u>, 832 F.2d 1142, 1149 (9th Cir. 1987).

There is no disputed issue of material fact.  SHA denied Everett due process.  The court should so declare and enter partial summary judgment on

the issue of SHA's liability in connection with that denial, setting a timeline for

trial on the questions of appropriate injunctive and monetary relief.

RESPECTFULLY SUBMITTED,

_____

/s/Joseph R. DeCristopher, Pa. Id. 29937
jdecristopher@northpennlegal.org
North Penn Legal Services

I hereby certify that service upon defendant through counsel will be

made through the court's Electronic Case Filing System.

Pursuant to Local Rule 7.8(b), I also certify that although this brief

exceeds 15 pages, it, including this certification, contains less than

4,500  words, within the 5,000 word maximum.

RESPECTFULLY SUBMITTED,

_____

/s/Joseph R. DeCristopher, Pa. Id. 29937