**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRENDA EVERETT, | : | |
| | : | CIVIL ACTION NO. **4:13-CV-1515** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| HOUSING AUTHORITY OF THE | : | |
| CITY OF SHAMOKIN, | : | |
| | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

## I.      BACKGROUND & PROCEDURAL HISTORY.

This action arose as a result of Plaintiff Brenda Everett's attempt to secure housing subsidy under the Section 8 Housing Choice Voucher ("HCV") program for a residence in Shamokin, Pennsylvania.  Toward this end, Plaintiff, who for some period up until June 30, 2012, participated in the HCV program administered by the Harrisburg Housing Authority ("HHA"), sought to transfer or "port" her existing HCV from Harrisburg, Pennsylvania, to Shamokin, Pennsylvania.  After Plaintiff was issued a search voucher by Defendant Shamokin Housing Authority ("Defendant SHA"), the port process was halted, and her search voucher was revoked, by Defendant SHA due to their belief that Plaintiff's adult son, who was collecting his own Section 8 housing subsidy, was living in Plaintiff's household in violation SHA policies and HUD regulations.  This confusion regarding Plaintiff's household composition was compounded by the fact that the initial portability paperwork submitted by HHA contained an error which represented that Plaintiff sought housing

for a four, rather than three, person household; an error which may have been material to whether Plaintiff's reported income met the payment standards for a two-bedroom unit in the receiving PHA (Shamokin).  Following an informal hearing on this issue in October of 2012, Defendant SHA notified Plaintiff that its belief that her adult son was living in her household was incorrect. However, Plaintiff's search voucher was not reinstated.

Plaintiff contends that she received no notification of any further decision by Defendant SHA to revoke her search voucher, or deny or terminate assistance.  In the interim period, Plaintiff submitted several letters to the United States Department of Housing and Urban Development ("HUD"), and HUD investigated the circumstances of Defendant SHA's revocation of Plaintiff's search voucher, and Defendant SHA's denial or termination of Plaintiff's Section 8 rent subsidy. In February 2013, Plaintiff filed a complaint with Pennsylvania Human Rights Commission ("PHRC") alleging that Defendant SHA terminated her Section 8 assistance on the basis of racial discrimination.  After the stated administrative avenues failed to resolve the issue to Plaintiff's satisfaction, Plaintiff initiated the instant civil action in this federal Court.

Specifically, on June 6, 2013, Plaintiff, a resident of Shamokin, Northumberland County, Pennsylvania, filed, through counsel, the instant civil rights action pursuant to 42 U.S.C. § 1983, in order to enforce her rights under the United States Housing Act of 1937 ("USHA"), 42 U.S.C. §§1437, *et seq*.  (**Doc. 1**).  Plaintiff raised a due process claim under the Fourteenth Amendment. Plaintiff also raised a claim under the Housing Act. Plaintiff attached Exhibits to her Complaint. Defendants named in Plaintiff's Complaint were the Housing Authority of the City of Shamokin ("SHA") and Ronald A. Miller, Executive Director of the SHA, in his official capacity.  On the same

date as her Complaint, Plaintiff filed a motion to proceed *in forma pauperis*, which was later **GRANTED** by the Court.  (Docs. 2 & 4).  Plaintiff also filed a motion for preliminary injunction which was fully briefed by the parties, (Docs. 3, 6, 13, 16), and which was **DENIED** following a hearing.  (Docs. 36 & 37).  In the same opinion, the Court **GRANTED** Defendants' Motion for Partial Judgement on the Pleadings (Doc. 21), which had also been fully briefed by the parties. (Docs. 22 & 25).  Pursuant to the Court's Order, Doc. 37, Plaintiff's claim under the U.S. Housing Act (Count I) was **DISMISSED WITH PREJUDICE,** her claims against Defendant Miller in his official capacity were **DISMISSED WITH PREJUDICE**, and Defendant Miller was **DISMISSED FROM THE CASE**.  Therefore, Plaintiff's only remaining claim is a due process claim under the Fourteenth Amendment of the United States Constitution brought against Defendant SHA pursuant to 42 U.S.C. § 1983.

The parties then engaged in discovery, which closed on December 31, 2013.  (Doc. 38). The Court set the dispositive motion deadline as January 31, 2014.  This Court has jurisdiction over this action based on 28 U.S.C. § 1331 and §1341(a), and the parties consented to proceed before a U.S. Magistrate Judge for all matters pursuant to 28 U.S.C. §636(c).[1]  (Docs. 23 & 24).

There are currently three (3) ripe motions before the Court.  On January 31, 2014, both Plaintiff and Defendant filed cross-motions for summary judgment, (**Docs. 39 & 43**), Plaintiff filed an amended motion for partial summary judgment on the same date.  (**Doc. 40**).  Plaintiff's amended motion for partial summary judgment on the issue of liability (**Doc. 40**) has been fully

---

[1]The undersigned was originally assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

briefed and is ripe for review.  (Docs. 41, 42, 46, 47, 48, 52).  Defendant SHA's motion for summary judgment **(Doc. 43)** has also been fully briefed and is ripe for review.  (Docs. 44, 45, 49, 50, 51).

On March 28, 2014, Plaintiff filed a Motion for leave of Court to file a Supplemental Affidavit of Cheryl Hawk along with the proposed Supplemental Affidavit.  **(Docs. 53 & 53-3).** Plaintiff simultaneously filed her support brief. (Doc. 54).  Defendant SHA filed its opposition brief on April 15, 2014.  (Doc. 55).  Plaintiff then filed her reply brief on April 29, 2014.  (Doc. 56). Therefore,  Plaintiff's Motion for leave of Court to file a Supplemental Affidavit of Cheryl Hawk **(Doc. 53)** is also ripe for disposition.

The Court will first consider Plaintiff's Motion for leave of Court to file a Supplemental Affidavit of Cheryl Hawk.  **(Doc. 53).**

## II.    PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL AFFIDAVIT (DOC. 53)

Plaintiff requests the Court to grant her leave to file a Supplemental Affidavit of Cheryl Hawk, the Housing Choice Voucher Program Director for HHA, so Hawk can clarify the underlying facts of this case, including the computer coding used by HHA and HUD (such as the codes on the HA Query Reports and the HUD computerized PIC System), and further explain the housing voucher process and the process of porting. The Court has reviewed the proposed 12-paragraph Supplemental Affidavit of Cheryl Hawk which is found at Doc. 53-3 and is dated March 21, 2014. The original Affidavit of Cheryl Hawk is found at Doc. 49-1 and is dated January 10, 2014.

The Court agrees entirely with Plaintiff that the Supplemental Affidavit of Cheryl Hawk should be allowed to try and clarify the underlying facts of this case and, to assist the Court in

understanding the housing voucher process and the process of porting.  In her Supplemental Affidavit, Cheryl Hawk also explains why the "Code 6– end of participation" status was entered by HHA with respect to Plaintiff's Section 8 housing choice voucher with HHA  in January of 2013. Cheryl Hawk further explains why the Code 6 entry was a mistake, and she avers what the correct coding status in PIC System for Plaintiff should have been, namely, "Code 5, portability move-out" effective June 30, 2012.  While Defendant SHA has opposed Plaintiff's Doc. 53 Motion based on the Court's briefing schedule, its 2-page brief, for the most part, contests the averments in Hawk's Supplemental Affidavit and concludes that the undisputed evidence shows that Plaintiff was not an HHA participant when she tried to port.

The Court will **GRANT** Plaintiff's Motion for leave of Court to file the Supplemental Affidavit of Cheryl Hawk **(Doc. 53)** and, it will consider the Supplemental Affidavit of Cheryl Hawk found at Doc. 53-3 with respect to the cross-summary judgment motions filed by the parties.  The Court will also consider Defendant SHA's contentions in its Doc. 55 opposition brief as to why the averments in Hawk's Supplemental Affidavit do not create any genuine issues of material fact in this case and why the averments do not demonstrate that Plaintiff was an HHA participant when she tried to port.  As such, the Court  will consider the Supplemental Affidavit of Cheryl Hawk in the context of all of the other evidence submitted by the parties.

## III.    CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOCS. 40 &43)

In her Amended Motion for Partial Summary Judgment, (**Doc. 40**), Plaintiff contends that there is no genuine issue of material fact, and that she is entitled to judgment in her favor on the issue of liability as a matter of law; she requests that the Court grant her motion for partial summary

judgment and schedule a trial on the issues of injunctive and monetary relief. (Doc. 40, pp. 2, 11). With respect to each element of her §1983 claim, Plaintiff asserts that: (1) there is no issue of material fact that Plaintiff is a "participant" as defined by HUD regulations, and Defendant SHA's failure to provide written notice of its decision to terminate her assistance under the HCV program and an opportunity to request informal review of that decision violated her Fourteenth Amendment right to procedural due process under the U.S. Constitution as a matter of law; and (2) there is no genuine issue of material fact that SHA Executive Director Ronald A. Miller is a policy-making official with final authority over the termination of Plaintiff's participation in the HCV program, and, as a matter of law, Mr. Miller's decision to revoke or terminate assistance under the HCV program had the effect of an official SHA policy for the purposes of Plaintiff's §1983 claim.

In its Motion for Summary Judgment, **Doc. 43**, Defendant SHA contends that: (1) there is no material issue of fact that Plaintiff is *not* a "participant" as defined by HUD regulations, and Plaintiff was not entitled to an informal hearing following Defendant SHA's decision to deny assistance; and, in the alternative, (2) there is no material issue of fact that Plaintiff failed to identify any SHA custom or policy that deprived her of a due process right, and, in the absence of any such custom or policy, Defendant SHA is not liable under §1983 for the official actions of its agents as a matter of law.

### A.      STANDARD OF REVIEW – CROSS-MOTIONS FOR SUMMARY JUDGMENT

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372

F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985)(*quoting Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977)).

Under Rule 56, summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox*, 477 U.S. at 322. Moreover, the Third Circuit indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 241 Fed.Appx. 868, 869 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "[s]ummary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir. Feb. 3, 2009)(citations omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144, 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination.").

The Third Circuit has instructed that:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Phila*, 527 F.3d 299, 310 (3d Cir. 2008)(quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). Thus, a court applies the same legal standard to review cross-motions for summary judgment as would be applied to a motion filed by a single party. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Accordingly, each movant must demonstrate

that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).[2]

## B.   MATERIAL FACTS

Defendant SHA is a public housing authority organized under the laws of the Commonwealth of Pennsylvania. (Doc. 41, ¶2). SHA employee Michele T. Moyer was initially handling Plaintiff's port-in request. (Doc. 41, ¶12). Ms. Moyer was separated from her employment in or about October or 2012. (*Id.*). Ronald A. Miller is the executive director of Defendant SHA, and prior to her separation, was Ms. Moyer's immediate supervisor. (*Id.*). Executive Director Miller took over Ms. Moyer's responsibility to oversee Plaintiff's port-in request until a replacement was hired in November 2012.[3] (*Id.*).

Plaintiff and her family participated in the Section 8 HCV program administered by HHA through June 30, 2012. (Doc. 41, ¶1, Doc. 44, ¶1). Thereafter, Plaintiff moved from Harrisburg, Pennsylvania, to the city of Shamokin and entered into a lease for an apartment located at 401 S. 5th Street, Shamokin, Pennsylvania, where she continues to reside.[4] (Doc. 44 ¶3). Plaintiff

---

[2] "Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

[3] In its opposition to Plaintiff's statement of undisputed material facts, Defendant SHA asserts that the facts related to Ms. Moyer's separation, Executive Director Miller's supervisory authority and responsibilities as Executive Director are not relevant to any claim or defense in this action. (Doc. 47, ¶12). Defendant SHA did not indicate whether the facts themselves were disputed or not disputed.

[4] In her response to Defendant SHA's statement of material facts, Plaintiff "qualified" Defendant SHA's recitation of this fact by asserting that she did not move to Shamokin, Pennsylvania, until late August 2012, as is reflected by the address used in correspondence exchanged between the parties regarding the issuance of a search voucher in August 2012. (Doc. 49, ¶ 3; *see also* Doc. 49-5).

attempted to obtain housing assistance from Defendant SHA by "porting" her voucher from HHA to Defendant SHA.  (Doc. 44, ¶4).  On July 24, 2012,Defendant SHA received a pre-port inquiry regarding a three-bedroom voucher sent by HHA on Plaintiff's behalf.  (Doc. 41, ¶4; *see also* Doc. 41-6).  In its response, Defendant SHA provided its current payment standards, and reported that its current policy was to absorb incoming portabilities.  (Doc. 41-6).  Thereafter, HHA submitted two sets of portability paperwork on Plaintiff's behalf.  (Doc. 44, ¶4).  The first submission, received by Defendant SHA on July 24, 2012, sought to port Plaintiff's HHA voucher for a three-bedroom unit to accommodate a four-person household.  (Doc. 44, ¶5; *See also* Doc. 45-2).  The second submission, received by Defendant SHA on August 9, 2012, sought to port Plaintiff's HHA voucher for a two-bedroom unit to accommodate a three-person household.  (Doc. 44, ¶6; *see also* Doc. 45-3).

On August 24, 2012, Defendant SHA issued a search voucher to Plaintiff for a three-bedroom unit.[5]  (Doc. 41, ¶6; Doc. 44, ¶9; *see also* Docs. 41-8 & 45-4).  On the same date, Plaintiff completed a "Request for Tenancy Approval" form which identified her target dwelling at 401 S. 5th Street, Shamokin, Pennsylvania; she then tendered the completed form to Defendant SHA. (Doc. 41, ¶7; *see* Doc. 41-10).  Defendant SHA scheduled, but did not complete, an inspection

---

[5]In its statement of facts, Defendant SHA stated that the August 24, 2012, search voucher was issued based on HHA's first submission of portability paperwork which sought a three-bedroom unit to house four people.  (Doc. 44, ¶9).  In her response to Defendant SHA's statement of facts, Plaintiff objects that the August 24, 2012, voucher was issued in response to the first submission of portability paperwork.  (Doc. 49, ¶9).  In support of her position, she cites to evidence which shows that Defendant SHA was in possession of Plaintiff's corrected portability paperwork on August 9, 2012, approximately two weeks before the voucher was issued.  (*See* Doc. 45-3).

of the target dwelling.[6]  (Doc. 41, ¶8).

On September 5, 2012, Plaintiff received notice that Defendant SHA could not provide her with a subsidy based on a report that Plaintiff's adult son was living in her household in violation of SHA policy; this notice provided Plaintiff with an opportunity to schedule an informal hearing.[7] (Doc. 41, ¶10; *see also* Doc. 41-13).  Plaintiff requested, and was granted, an informal hearing which took place on October 9, 2012.[8]  (Doc. 41, ¶11).  On October 17, 2012, Plaintiff received a letter from Defendant SHA, signed by Executive Director Ronald A. Miller, stating that its decision to deny payment of her housing subsidy, or terminate assistance, due to the presence of an illegal occupant in her household was based on incorrect information.[9]  (*Id.*; *see* Doc. 41-14).

Sometime thereafter, Defendant SHA decided that Plaintiff's household did not qualify for the three-bedroom unit that had been initially authorized by the August 2012 search voucher.[10] (Doc. 44,  ¶13).  Defendant SHA also determined that Plaintiff's income, as reported by HHA,

---

[6]In its opposition to Plaintiff's statement of material facts, Defendant SHA does not dispute that an inspection was scheduled and not completed, but contends that this is not a material fact. (Doc. 47 ¶8).

[7] In its opposition to Plaintiff's statement of material facts, Defendant SHA does not dispute that such a notice was sent, but disputes that it is a material fact.  (Doc. 47, ¶10).

[8]In its opposition to Plaintiff's statement of material facts, Defendant SHA does not dispute the date of the hearing, but does dispute that it is material fact.  (Doc. 47, ¶11).

[9]In its opposition to Plaintiff's statement of material facts, Defendant SHA does not dispute the October 17, 2012, decision as described by Plaintiff, but does dispute that it is a material fact. (Doc. 47,  ¶11).

[10]In her opposition to Defendant SHA's statement of facts, Plaintiff disputes Defendant SHA's representation as stated.  Plaintiff clarifies that she received no notification of any decision by Defendant SHA that Plaintiff's three-person household did not qualify for a three-bedroom unit under the PHA subsidy standards, and was not provided an opportunity to contest this decision. (Doc. 49, ¶13).

would result in a $0 subsidy amount. (Doc. 44, ¶14). On April 2, 2013, Plaintiff received written notification from Defendant SHA, signed by Executive Director Miller, that the computation of her total tenant payment exceeded the fair market rent payment standards of Northumberland County, thus would result in a $0 subsidy. (Doc. 49 , ¶14(b); Doc. 45-10). This notification did not provide any procedural mechanism for Plaintiff to contest Defendant SHA's decision. (Doc. 45-10).

Prior to filing this action, Plaintiff submitted several complaints to HUD regarding Defendant SHA's administration of her voucher. (Doc. 41, ¶16; Doc. 44, ¶15). As a result, the Director of the Office of Public Housing ("Director") exchanged several letters with the Executive Director of SHA. (Doc. 41, ¶16; Doc. 44, ¶¶ 16, 18; Doc. 41-22). In correspondence dated February 5, 2013, April 11, 2013, and May 10, 2013, after reviewing the reasons Defendant SHA gave in support of its decision to revoke Plaintiff's search voucher, the Office of Public Housing Director ordered that Defendant SHA immediately reissue Plaintiff's voucher, and informed Defendant SHA that sanctions could be a possible consequence for a public housing authority's persistent failure to comply with program regulations; however, no such sanction was ever realized. (Doc. 41, ¶16; Doc. 47, ¶16; Doc. 41-22). In its letter dated April 11, 2013, the Office of Public Housing Director agreed with Defendant SHA that a HAP contract could not be signed for a unit where the tenant payment was greater than gross rent, but informed Defendant SHA that this issue could be properly handled by: (1) issuing a letter to Plaintiff informing her of the gross rent for the unit she selected; and  (2) informing Plaintiff that her voucher would be terminated if she decided to rent a unit where her tenant payment was greater than gross rent. (Doc. 44, ¶19; Doc. 41-22).

On February 11, 2013, Plaintiff filed a *pro se* complaint with the PHRC alleging racial discrimination by Defendant SHA. (Doc. 44, ¶15). After investigating Plaintiff's allegations, the

12

PHRC determined that Plaintiff's complaint should be dismissed.  (Doc. 44,  ¶17).

On September 20, 2013, after the commencement of this action, Plaintiff received a "Notice of Termination of Section 8 Rental Assistance" from Defendant SHA which explained why the search voucher issued in August 2012,  should not have been processed and advised her of her right to request an informal hearing pursuant 20 C.F.R. §982.555.  (Doc. 41, ¶15; Doc. 41-20). Plaintiff rejected this offer for an informal hearing.  (Doc. 44,  ¶27).

Defendant SHA has provided a Housing Authority Query Report dated February 19, 2014, which reflects that Plaintiff's status in the HCV program changed to "Code 6" or "end of participation" effective June 30, 2012.  (Doc. 47-1).  Plaintiff has provided a Housing Authority Query Report dated February 27, 2014, which reflects that Plaintiff's status in the HCV program changed to "Code 5" or "portability-move out" effective June 30, 2012.  (Doc. 52-1).

## IV.   CROSS-MOTIONS FOR SUMMARY JUDGMENT DISCUSSION.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993)(quoting *Parratt v. Taylor*, 451 U.S. 527, 535(1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).  Thus, "§1983 authorizes an injured Plaintiff to assert a claim for relief against a person who violated the Plaintiff's federally protected rights while acting under color of state law."  *Swift v. McKeesport Housing Auth.*, 726 F.supp.2d 559, 571 (W.D.Pa. 2010).

When analyzing a §1983 claim alleging a state actor's failure to accord appropriate levels of procedural due process, under the second element discussed above, the Court's inquiry is

13

twofold.  First, the Court must determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property; if so, the Court must  then consider whether the procedures available provided Plaintiff with adequate due process.  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *Swift v. McKeesport Housing Auth.*, 726 F.Supp.2d at 574.  "In order to state a claim for failure to provide due process, a Plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."   *Alvin v. Suzuki*, 227 F.3d at 116.

1.      **THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFF HAD A VALID PROPERTY INTEREST IN HER SECTION 8 VOUCHER ON JULY 24, 2012**

The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV.  A procedural due process claim under the Fourteenth Amendment has two steps.  *Zehner v. Pa. Board of Probation and Parole, et al.*, 2014 WL 1235998, *3 (W.D.Pa.)(citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972)); *see also Alford v. Pa. Dept. of Corrections*, 2014 WL 310100, *2 (M.D.Pa. Jan. 28, 2014)(citations omitted).

In *Zehner*, 2014 WL 1235998, *3, the Court stated:

"First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state.  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citing *Board of Regents*, 408 U.S. at 571).  Second, and if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient.  *Id.* (citing *Hewitt v.* Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed. 2d 675 (1983))."

Property interests are created, and their dimensions defined, by the existing rules of understandings that stem from an independent source – such as state law rules or understandings that secure certain benefits and support claims of entitlement to those benefits. *Bd. of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). To have a property interest in a benefit, such as a Section 8 rent subsidy voucher, an individual must have more than an abstract need or desire for it. *Id.* Instead, the individual must have a legitimate claim of entitlement to it. *Id.*

The Court in *Swift v. McKeesport Housing Auth.*, 726 F.Supp.2d at 574, stated, "Plaintiff's Section 8 voucher, like welfare benefits, is a property interest for purposes of due process." (citation omitted).  In determining whether a Plaintiff has been deprived of her property sans due process "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975 (1990). "[A] pre-deprivation hearing is generally required before a state seizes a person's property ... ." *Swift v. McKeesport Housing Auth.*, 726 F.Supp.2d at 574 (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d cir. 2010)).

In the present case, Plaintiff Everett asserts that, as a "participant" of the Section 8 HCV program, she had a valid property interest when she sought to "port" her voucher to Shamokin. Defendant SHA asserts that Plaintiff's participation in the Section 8 HCV program ended on June 30, 2012, thus she was an "applicant," rather than a "participant," in the Section 8 HCV program when she submitted her "port-in" request to Shamokin.  Therefore, Defendant SHA contends that Plaintiff had no valid property interest in her *expired* Section 8 voucher.

Plaintiff supports her assertions that she had a  valid property interest at stake by pointing out that an HA Query Report performed in October 2013, and, most recently, on February 27,

2014, reflects that her voucher had a "portability" or "move out" status. (Doc. 49-2, Doc. 52-1). Plaintiff also point to the Affidavit of Cheryl A. Hawk, an employee of HHA, who reported that on June 5, 2012, before the cessation of subsidy payments on June 30, 2012, HHA properly issued Plaintiff "port vouchers." In March 2014, as discussed above, Ms. Hawk completed a second Affidavit (Doc. 53-3) which is the subject of Plaintiff's Motion for Leave to file Supplemental Affidavit. (Doc. 53). As mentioned, the Court will grant Plaintiff's Doc. 53 Motion, and will consider Ms. Hawk's Supplemental Affidavit. (Doc. 53-3). In her Supplemental Affidavit, Ms. Hawk explained that the duration of "port vouchers" typically extends beyond periods of payment of subsidy so that a person has ample time to find another landlord willing to accept payment of subsidy under the HCV program and, to allow for the negotiation and execution of a HAP contract between the landlord and Housing Authority. (Doc. 53-3). Ms. Hawk also explained that at the time Plaintiff's initial and amended port requests were received by Defendant SHA, Plaintiff was, and thereafter remained, a "participant" of the Harrisburg Housing Authority's HCV program seeking to move with subsidy. (*Id.*). Furthermore, the Court notes that the written "Notification of Termination of Section 8 Rental Assistance" that Defendant SHA sent to Plaintiff in September 2013, three (3) months after the instant Complaint was initiated in this federal Court, states that Plaintiff had a "right to an informal hearing pursuant to the procedures set forth in 24 C.F.R. §982.555," a HUD regulation which Defendant admits, pertains only to "participant families." (Doc. 45-14).

In support of its position that Plaintiff had no valid property interest in her "expired" Section 8 voucher, Defendant SHA points to an HA Query, generated in February 19, 2014, which reflects that Plaintiff's participation in the Section 8 HCV program ended effective June 30, 2012. (Doc.

16

47-1).

Because the parties have each provided some measure of evidence to support their diametrically opposed positions on the issue of whether Plaintiff was a "participant" in the Section 8 voucher program as of July 24, 2012, the Court finds that an issue of fact exists as to whether Plaintiff was a "participant" at that time.  The Court now turns to the question of whether this issue of fact is material to the determination of whether Plaintiff had a valid property interest in her Section 8 voucher as of July 24, 2012.

As stated, Defendant SHA contends that Plaintiff was an "applicant" of the Section 8 HCV program, rather than a "participant" as of July 24, 2013, because its most recent HA Query reflected that Plaintiff's voucher had expired on June 30, 2012.  Neither party disputes that a "participant" in a Section 8 rent subsidy voucher program has a valid property interest in their voucher.  As stated above, a Section 8 voucher "is a property interest for purposes of due process." *Swift v. McKeesport Housing Auth.*, 726 F.Supp.2d at 574.  However, Defendant SHA contends that, unlike a participant, an "applicant" does not have a valid property interest in a Section 8 voucher.  Though the Third Circuit has not issued a dispositive ruling on this issue, it did, on one occasion, affirm a district court decision that the Fourteenth Amendment due process rights of Section 8 applicants deemed ineligible to receive assistance under an arrearage policy were adequately protected by notice and hearing provisions of that policy. *See Vandermark v. Housing Auth. of the City of York*, 663 F.2d 436, 442 (3d. Cir. 1981). The Seventh Circuit has construed *Vandermark* as a tacit recognition by the Third Circuit of the existence of a valid property interest for applicants under a Section 8 program.  *See Eidson v. Price*, 745 F.2d 453, 461 n. 6 (7th Cir, 1984).  This approach was also embraced by the District of New Jersey in *Baldwin v. Housing Auth.*

17

*Of City of Camden, NJ.* 278 F.Supp.2d 365, 378 (D.N.J. 2003)(finding that a rejected applicant of the HCV program has a sufficient property interest in his or her receipt of federal vouchers to support a Fourteenth Amendment procedural due process claim against a public housing authority for the violation of his or her rights where his or her application for eligibility is denied). Bearing these principles in mind, the Court finds that, as a matter of law, Plaintiff Everett would have a sufficient property interest in a Section 8 rent subsidy voucher as either a "participant" or "applicant." Therefore, any dispute of fact as to whether Plaintiff Everett was an "applicant" or "participant" is not material to the determination of whether she had a protected property interest in a Section 8 rent subsidy voucher.

2.   **THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFF WAS PROVIDED "PROMPT" NOTIFICATION AND AN OPPORTUNITY FOR MEANINGFUL REVIEW OF DEFENDANT SHA'S DECISION TO TERMINATE OR DENY HER RENT SUBSIDY**

Defendant SHA argues that Plaintiff's claim that she was denied meaningful review of Defendant SHA's decision to deny or terminate assistance under the HCV program fails for two reasons. First, Defendant asserts that, as an "applicant," Plaintiff Everett was not entitled to an informal hearing under the HUD regulations. Second, Defendant SHA argues that Plaintiff is precluded from prevailing on her due process claim because she did not avail herself of Defendant SHA's offer of an informal hearing in its September 20, 2013 notice of termination, and because she received adequate process review of her claims when she requested a HUD inquiry.[11]

---

[11] The Court finds Defendant SHA's assertion that Plaintiff's PHRC complaint and request for HUD intervention were adequate post-deprivation remedies to be unpersuasive as neither of these avenues were consistent with the post-deprivation procedures outlined in the HUD regulations and, the due process violations alleged herein were not addressed during either proceeding.

As mentioned, in determining whether a Plaintiff has been deprived of her property without due process "it is necessary to ask what process the State provided, and whether it was constitutionally adequate."   *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975 (1990).   When a State deprives a person of his or her property, in some cases, "a statutory provision for a postdeprivation hearing, ... , satisfies due process."   *Id.* at 128.

Pursuant to 24 C.F.R. §982.555, the PHA ***must*** give a participant family an opportunity for an informal hearing to consider whether the following PHA decisions relating to the individual circumstances of a participant family are in accordance with the law, HUD regulations, and PHA policies:

> (i) A determination of the family's annual adjusted income, and the use of such income to compute the housing assistance payment.

> (ii) A determination of the appropriate utility allowance (if any) for tenant-paid utilities from the PHA utility allowance schedule.

> (iii) A determination of the family unit size under the PHA subsidy standards.

> (iv) A determination that a certificate program family is residing in a unit with a larger number of bedrooms than appropriate for the family unit size under the PHA subsidy standards, or the PHA determination to deny the family's request for an exception from the standards.

> (v) A determination to terminate assistance for a participant family because of the family's action or failure to act (see §982.552).

> (vi) A determination to terminate assistance because the participant family has been absent from the assisted unit for longer than the maximum period permitted under PHA policy and HUD rules.

Furthermore, 24 C.F.R. §982.555(c) provides that with respect to paragraphs (i), (ii), and (iii), the PHA must notify the participant family that they may *ask* for explanation of the basis for the determination, and may request an informal hearing.   24 C.F.R. §982.555(c) also provides that,

with respect to paragraphs (iv), (v), and (vi), the PHA must provide prompt written notice to the family *containing* a brief statement of reasons for the decision, provide an opportunity to request and informal hearing and a deadline for any such request.

Pursuant to 24 C.F.R. §982.554(a), the PHA **must**:

> [G]ive an **applicant** for participation prompt notice of a decision denying assistance to the applicant.  The notice must contain a brief statement of the reasons for the PHA decision.  The notice must also state that the applicant may request an informal review of the decision and must describe how to obtain the informal review.

(emphasis added); *see also* 24 C.F.R. §982.5 ("Where part 982 [of Title 24 of the Code of Federal Regulations] requires any notice be given by the PHA to a family or the owner, the notice must be in writing.").

Plaintiff argues that there is no genuine dispute that Defendant SHA revoked her search voucher and terminated her Section 8 assistance, and failed to provide "timely" or "prompt" notification of its decision to do so, or an opportunity to request an informal hearing, as required pursuant to 24 C.F.R. §982.555(a) and C.F.R. §982.555(c)(2).  On the other hand, Defendant SHA argues that there is no genuine dispute that Plaintiff was *not* a "participant" in HCV voucher program at the time Defendant SHA issued the search voucher, and therefore Plaintiff was not entitled to an informal hearing pursuant to 24 C.F.R. §982.555.

Defendant SHA's position regarding Plaintiff Everett's legal status under the HUD regulations appears to be a fluid concept.  Defendant's confusion on this issue is highlighted by its own documents.  In Defendant SHA's opposition to Plaintiff's motion for summary judgment, it takes the position that Plaintiff is a "voucher holder" as defined by 24 C.F.R. §982.4.  (Doc. 48 p. 1-2). Next, in its own motion for summary judgment, Defendant SHA asserts that Plaintiff is an

"applicant" under the HUD regulations, and therefore is entitled to an informal review process pursuant to 24 C.F.R. §982.554. (Doc. 45 p. 8).   Last, Defendant SHA appended a letter from Executive Director Miller to Plaintiff dated September 20, 2013, to its brief entitled "Notice of Termination of Section 8 Rental Assistance" wherein Miller advised Plaintiff of her right, as a participant, to an informal hearing under 24 C.F.R. §982.555.  (Doc. 45-14).

Furthermore, even if Defendant SHA was correct in its assertion that Plaintiff was an applicant entitled to informal *review*, rather than participant, entitled to an informal *hearing*, there is no dispute that Plaintiff was entitled to prompt notification of Defendant SHA's decision to "deny" or "terminate" her assistance and an opportunity to request some post-decision review process as provided for in the HUD regulations.

Fourteen months after HHA submitted a portability request to Defendant SHA, and three months after the instant civil action was filed by Plaintiff in this federal Court, Defendant SHA did provide written notice to Plaintiff consistent with 24 C.F.R. §982.555(c)(2); this notice advised Plaintiff of her right to request an informal hearing within ten (10) days. (Doc. 45-14).  To the extent Defendant argues that Plaintiff cannot prevail on her due process claim because she failed to avail herself of Defendant SHA's September 20, 2013 offer of a second administrative hearing, the Court disagrees.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law." *Burns v. Pa. Dept. of Corrections*, 544 F.3d 279, 283-84 (3d Cir. 2008)(quoting *Zinerman v. Burch*, 494 U.S. 113, 125 (1990)).   For this reason, "a procedural due process violation is

complete at the moment an individual is deprived of a liberty or property interest without being afforded the requisite process." *Id.*

Based on the facts of the instant case, it is clear that at some time between October 17, 2012, and September 20, 2013, Defendant SHA decided to revoke Plaintiff's search voucher and to deny or terminate Plaintiff's assistance effective as of June 30, 2012.  Furthermore, it is clear that Defendant SHA did not provide written notice of, or an opportunity to contest, its decision to revoke Plaintiff's search voucher or of its decision to deny or terminate Plaintiff's assistance as outlined in 24 C.F.R. §§ 982.554 or 982.555 until September 20, 2013. Pursuant to the HUD regulations, Plaintiff was entitled to "prompt" written  notice of Defendant's decision.  The applicable regulations, however, do not provide any particular time frame within which notice must be provided.  Further, the Court points out that the parties have also failed to show any SHA policy regarding the deadline for the provision of a notice of denial or termination of assistance to the applicant or participant.

The Court finds that Plaintiff has presented sufficient facts to state a cognizable due process claim under the Fourteenth Amendment.  *See Swift v. McKeesport Housing Auth.*, 726 F.Supp.2d at 574. The Court also finds that there is a genuine issue of material fact as to if or when the  due process violation which Plaintiff alleges became complete.  Further, because the Court is  unable to ascertain if or when the alleged due process violation became complete, the Court finds that there is a genuine issue of material fact as to whether the September 25, 2013 notification was "prompt."  Likewise, because there is a genuine issue of material fact as to whether Defendant SHA's September 20, 2013 notice of termination and offer of an informal hearing was made available to Plaintiff before the completion of the alleged due process

22

violation, the Court is unable to decide  the issue of whether Plaintiff's refusal to avail herself of

Defendant SHA's September 2013 offer of an informal hearing thwarts her due process claim.

*See Alvin*, 227 F.3d at 118 ("When access to procedure is absolutely blocked or there is

evidence that the procedures are a sham, the plaintiff need not pursue them to state a due

process claim.").

> **3.      THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER SHA
> EXECUTIVE DIRECTOR MILLER ACTED AS A POLICYMAKER WHEN HE
> DENIED OR TERMINATED PLAINTIFF'S ASSISTANCE WITHOUT NOTICE OR
> AN OPPORTUNITY FOR A HEARING, AND CHOSE NOT TO REISSUE
> PLAINTIFF'S SEARCH VOUCHER**

To the extent Plaintiff named SHA as a Defendant and raises a constitutional claim

against this municipal corporation under §1983,[12] she must set forth facts showing that a custom

or policy of this municipal housing authority deprived her of a constitutional property right

under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Thus, the issue is whether

Plaintiff Everett has presented enough evidence to proceed on her due process claim against

Defendant SHA based on a theory of municipal liability.  "Plaintiff must show that the

deprivation of [her] benefits without due process was undertaken pursuant to an official policy

or an unofficial custom of [Defendant SHA]."  *Swift v. McKeesport Housing Auth.*, 726

F.Supp.2d at 574.   To do so, Plaintiff must prove either that (1) the alleged action by the

housing authority "implements or executes a policy, statement, ordinance, regulation, or

decision officially adopted and promulgated by the body's officers," or that (2) constitutional

---

[12]*See Swift v. McKeesport Housing Authority*, 2009 WL 3856304, *7 (W.D.Pa. Nov. 17, 2009)(Court held that a housing authority created under the PA Housing Authorities Law, 35 Pa. Stat. §1541 *et seq.*, was a municipal corporation which could be sued under §1983).

deprivations took place "pursuant to governmental 'custom' even though such a custom has not received formal approval" from official municipal decisionmakers. *Monell v. Department of Social Services*, 436 U.S. at 690-91.  The former theory is often referred to as a "policy" while the latter is referred to as a "custom."  Here, Defendant SHA contends that it is entitled to the grant of summary judgment because Plaintiff has failed to identify any SHA custom or policy that deprived her of her constitutional property right.  In response, Plaintiff argues that municipal liability under §1983 attached to Executive Director Miller's "policy" decision to deny or terminate without providing prompt notice or an opportunity for post-decision review.

When a single decision is the basis of the alleged constitutional violation, however, "municipal liability under §1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986).  Furthermore, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481-82.  Thus, in order to establish Defendant SHA's §1983 liability under this theory, it is incumbent upon Plaintiff Everett to show that a policymaker (*i.e.*, an SHA employee with policymaking authority) is responsible for the violation of her due process rights.  *Swift v. McKeesport Housing Auth.*, 726  F.Supp.2d at 576; *Solomon v. Phila. Housing Auth.*, 143 Fed.Appx. 447, 456 (3d Cir. 2005).

In *Swift v. McKeesport Housing Auth.*, 726  F.Supp.2d at 576-77, the Court stated:

> "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur,* 475 U.S. at 480, 106 S.Ct. 1292. Municipal liability, however, only attaches "where the

decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. 1292. Whether an official had final policymaking authority is determined by state law. *Id.* at 483, 106 S.Ct. 1292.

"Under the Pennsylvania Housing Authorities Law, 35 Pa. Cons.Stat. §1541, *et seq.*, a housing authority is governed by a Board of Commissioners which has final policymaking authority.  *See* 35 Pa. Cons.Stat. §1545 (2003); 35 Pa. ConsStat. §1547 (2003)("An authority may delegate to one or more of its agents or [employees] such of its powers as it shall deem necessary to carry out the purposes of this act, *subject always to the supervision and control of the Authority*.")(emphasis added)."    *Solomon v. Phila. Housing Auth.*, 143 Fed.Appx. at 456-57.   The Court finds that the evidence is disputed as to whether SHA Executive Director Miller was a policymaker and whether he was sufficiently involved  regarding the denial or termination of Plaintiff's Section 8 assistance.

In support of her position, Plaintiff points out that Executive Director Miller was the immediate supervisor of Michele T. Moyer, the SHA employee who initially handled Plaintiff's port-in request.  Furthermore, Executive Director Miller signed off on all correspondence between Plaintiff and Defendant SHA, and between Defendant SHA and HUD, regarding the denial or termination of her Section 8 assistance.

Defendant has failed to cite to any evidence to confirm or deny that Executive Director Miller acted as an SHA "policymaker" when he denied, or terminated, Plaintiff's Section 8 assistance, or when he made the deliberate choice not to reissue Plaintiff's search voucher as directed by the Director of the Office of Public Housing in February, April, and May of 2013. (Doc. 41-22). The Court  finds that the evidence cited by Plaintiff has created a genuine issue of

material fact as to whether Executive Director Miller acted as a policymaker in this instance. Therefore, the jury must determine whether the decision regarding the denial or termination of Plaintiff's Section 8 assistance can be ascribed to Defendant SHA itself as an official policy or practice under *Monell*, and whether Defendant SHA can be held liable with respect to Plaintiff's due process claim.

Accordingly, the Court finds that there are genuine issues of material fact as to: (1) whether the procedures made available by Defendant SHA prior to the completion of the alleged constitutional violation provided Plaintiff with adequate due process; and, (2)  whether Executive Director Miller was acting as a "policymaker" in this instance.  Therefore, the parties' cross-motions for summary judgment (**Docs. 40 & 43**) will be **DENIED**.

V.      **CONCLUSION.**

Based on the foregoing, the Court will **GRANT** Plaintiff's Motion for Leave to File a Supplemental Affidavit.  **(Doc. 53).**  Further, the Court will **DENY** Plaintiff's Amended Motion for Partial Summary Judgment (**Doc. 40**), and will **DENY**  Defendant SHA's  Motion for Summary Judgment.  **(Doc. 43)**.

An appropriate Order will be issued.


                              **s/ Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**


**Dated: September 5, 2014**